UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MELANIE W.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CIVIL NO. 1:19cv403 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

    This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

    The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.   The claimant has not engaged in substantial gainful activity since May 11, 2017,

       the application date (20 CFR 416.971 *et seq*.).

2.     The claimant has the following severe impairments: degenerative disc disease of the lumbar spine ; hypothyroidism; obesity; osteoarthritis and degenerative joint disease of the right lower extremity; chronic pain syndrome; headaches (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can sit for at least 45 minutes and for up to at least 8 hours in an 8-hour workday; must be allowed to alternate postural positions while remaining on task; can never climb ropes, ladders or scaffolds or crouch; can occasionally kneel and crawl; can occasionally bend and stoop in addition to what is required to sit; can occasionally use ramps and stairs, with rails; can perform the balance required of such activities; must avoid work involving concentrated exposure to vibration, such as using heavy sanders; must avoid work within close proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast moving exposed blades; must avoid working upon moving and/or wet and slippery surfaces; cannot have concentrated exposure to excessive heat, humidity and cold, such as when working outside or within a greenhouse, boiler room or refrigerator; and must avoid work within close proximity to very loud noises (level 5) such as a fire alarm and/or very bright flashing lights such as a strobe that fires more than occasionally.

5.     The claimant has no past relevant work (20 CFR 416.965).

6.     The claimant was born on January 12, 1984 and was 33 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

    economy that the claimant can perform (20 CFR 416.969 and 416.969a).

  10.  The claimant has not been under a disability, as defined in the Social Security Act, since May 11, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 23- 39).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on March 6, 2020. On May 12, 2020, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

4

of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff alleges that she suffers from obesity, hypothyroidism, hypertension, lumbar degenerative disc disease, degenerative joint disease/osteoarthritis/right lower extremity problems, carpal tunnel syndrome, chronic pain syndrome, tumor on the brain stem, and headaches.

In support of remand Plaintiff raises one issue, that the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion. Plaintiff claims that the RFC is illogical.

The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ makes an administrative assessment of a claimant's ability to perform work-related activities on a regular and continuing basis. 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.). An ALJ assesses a claimant's RFC based on all of the relevant evidence in the claim file at the time he or she makes a decision, including the objective medical evidence, medical source opinions and observations, and a claimant's own statements about her limitations. *Id*. Although the ALJ is responsible for assessing a claimant's RFC, the claimant has the burden of showing how her impairments limit her functioning. 20 C.F.R. § 416.912(a)(1); *Abbett v. Berryhill*, No. 1:17-CV-232-TLS, 2018 WL 3018967, at *5 (N.D. Ind. June 18, 2018) (holding that the plaintiff has the "burden to come forward with evidence of her limitations.").

Plaintiff argues that the "ALJ failed to build an accurate and logical bridge" between the evidence and his conclusions about Plaintiff's ability to perform the assessed postural limitations on an occasional basis (*i.e.*, occasional kneeling, crawling, bending, stooping, and using ramps and stairs with rails; and being able to perform the balance required of such activities) (Pl.'s Br. at

5

10-12). She contends that the ALJ's assessed postural limitations "are absurd and illogical in the context of [her] pertinent medical impairments and related limitations, especially when one considers the degree of her morbid obesity, her lumbar degenerative disk disease, her right lower extremity problems, and her range of motion deficits" (Pl.'s Br. at 12).

      The determinative issue in a disability adjudication is the functional impact of a condition; a mere diagnosis or examination note does not establish the severity of an impairment. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (the issue "is not the existence of these various conditions ... but their severity and, concretely, whether ... they have caused her such severe pain that she cannot work full time"); *Johnson v. Colvin*, No. 2:13-CV-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities.") (citations omitted). Simply listing various diagnoses, as Plaintiff does here, fails to demonstrate how the impairments limit her functioning. Moreover, the ALJ appropriately addressed Plaintiff's impairments – singly and in combination – and the resulting work-related functional limitations (Tr. 18-32). As the ALJ explained, the RFC finding is supported by the totality of the medical opinion evidence, the objective medical findings, and other medical evidence found in the record (Tr. 32).

      Plaintiff alleged having chronic back and right lower extremity pain (Tr. 24). She stated that her pain is treated with medication, which is about 80% effective in eliminating her symptoms (Tr. 24, 66-67). She stated that she could stand for up to 45 minutes at a time, sit for up to 45 minutes at a time, walk for up to one-half mile at a time, and she could not lift more than 10 pounds (Tr. 24, 88-89, 354, 363). She reported that she sits for about 60% of a normal day, and that sitting is more comfortable for her than standing (Tr. 24-25, 90-91). Plaintiff alleged having

6

difficulty with lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, completing tasks, understanding, following instructions, and using her hands (Tr. 24, 354, 380). The ALJ appropriately considered Plaintiff's symptoms and subjective complaints and found that Plaintiff's allegations were not entirely consistent with the medical evidence and other evidence of record (Tr. 24). 20 C.F.R. § 416.929; SSR 16-3p. An individual's subjective statements alone are insufficient to establish disability. 20 C.F.R. § 416.929(a) (statements about your pain or other symptoms will not alone establish that you are disabled).

In terms of the medical records, the ALJ discussed a May 2017 treatment note indicating that Plaintiff had tenderness and loss of sensation with positive right straight leg raises (Tr. 27, 1047). Diagnoses included radiculopathy and disc degeneration (Tr. 27, 1050). A lumbar spine MRI showed L4-5 disc dessication and stenosis along the L5 nerve root (Tr. 27, 1048). The ALJ explained that the RFC finding was consistent with exam findings that Plaintiff had 4-5/5 and 5/5 strengths, no swelling, and a negative straight leg raise on the left (Tr. 27, 1047). It is consistent also with x-rays positive only for mild degenerative changes of the left knee in October 2016 (Tr. 27, 1058).

Plaintiff was referred for physical therapy in June 2017, but after attending only two visits, she was discharged for failure to attend (Tr. 26-27, 1065).

In July 2017, John E. Mericle, M.D., evaluated Plaintiff at the request of the State Disability Determination Service (Tr. 27, 911-20). Plaintiff did not bring an assistive device to the examination (Tr. 27, 916). Dr. Mericle's report notes that Plaintiff had a normal gait, normal sustainability, normal posture, normal straight leg raises, normal stamina, normal station, normal squatting, normal strength and tone, normal ambulation, normal sensation, and no problems with

7

fine finger activities (Tr. 27-28, 911-20). Dr. Mericle found that Plaintiff had normal range of motion throughout her musculoskeletal system, but some limited range of motion in her right ankle (Tr. 27, 916-19). Dr. Mericle indicated that Plaintiff was able to lift/carry less than 10 pounds frequently and over 10 pounds occasionally (Tr. 31, 917).

In October 2017, Plaintiff reported having edema in her legs, but she was doing better, with only some swelling in her lower right leg (Tr. 28, 1074-77). During a November 2017 follow-up visit, Plaintiff denied leg swelling, syncope, and loss of concentration (Tr. 28, 1079-80). On examination, she had no edema or significant musculoskeletal or neurological abnormalities (Tr. 28, 1081).

A December 2017 record notes that Plaintiff had a "history of Chiari malformation" along with lumbar stenosis "without neurogenic claudication," traumatic arthritis of the right ankle, and chronic pain syndrome (Tr. 28, 1102). As of December 2017, she exhibited limited cervical motion to the right and cervical tenderness, as well as lumbar tenderness and pain with flexion and right lower extremity edema (Tr. 28, 1111). However, she had a normal gait (Tr. 28, 1111). Plaintiff's bilateral upper and lower extremity coordination was normal and symmetric and there was no loss of motion (Tr. 28, 1111). She had negative straight leg raises and negative hip, sacroiliac, and knee maneuvers (Tr. 28, 1111). As the ALJ explained, these clinical findings reflect Plaintiff's complaints of pain, but they did not reflect severe loss of dexterity, coordination, or sensation related to the neck or the low back (Tr. 28). The ALJ concluded that the findings did not warrant additional RFC limitations (Tr. 28).

The ALJ discussed Plaintiff's January 2018 cervical spine x-rays, which revealed no abnormalities, and hip x-rays, which revealed only minimal osteoarthritis of the hips (Tr. 29,

1175-78). Further, lumbar spine x-rays revealed mild degenerative changes, while thoracic spine x-rays revealed mild degenerative disc disease with mild spondylosis and small osteophytes (Tr. 29, 1179-82).

In February 2018, Plaintiff reported having fatigue and a rash (Tr. 28, 1083). However, she denied having shortness of breath, leg swelling, myalgias, vertigo, syncope, concentration loss, sleep disturbance, or a dysphoric mood (Tr. 28, 1083). Plaintiff alleged having weakness, but she denied cold intolerance (Tr. 28, 1083). She had no edema, and musculoskeletal and neurological were normal (Tr. 28, 1083). The ALJ found that these treatment notes do not reflect greater limitations of function related to mental complaints, carpal tunnel syndrome, headaches, the neck, upper extremities/hands, low back, or lower extremities as of February 2018 (Tr. 28, 1083-86).

In April 2018, Plaintiff reported that Norco was only 40% effective (Tr. 29, 1219). She still smoked even though she was told that smoking exacerbates chronic pain (Tr. 29, 1220). She alleged back and leg pain, but on examination, she exhibited no acute distress; she had normal back motion with pain upon motion; she had full and pain-free peripheral joint motion, 1+ edema to the legs, normal upper and lower extremity strengths, no atrophy, a normal gait, and an appropriate mood and affect (Tr. 29, 1225). The pain clinic note indicates that Plaintiff went to an initial physical therapy evaluation, but she did not return for further treatment (Tr. 29, 1219). Plaintiff alleged physical therapy and weight management were not covered by insurance (Tr. 29, 1219). However, the report notes that insurance approved 100% coverage for physical therapy and weight management (Tr. 29, 1226). She was informed she needed to get physical therapy completed as it was part of the treatment plan, and she agreed to return to physical therapy (Tr.

9

29, 1226). As the ALJ indicated, these notes reflect complaints of pain and loss of sensation, but do not create greater limitations of function than those reflected in the RFC (Tr. 29).

June 2018 pain clinic treatment notes reflect Plaintiff's complaints of 8/10-9/10 pain levels, worsened with walking and better with leg elevation (Tr. 29, 1289). But Plaintiff acknowledged that Gabapentin and Diclofenac were effective, and Norco provided 80% relief of pain (Tr. 29, 1289). The note indicates that Plaintiff failed to attend a May 23, 2018, random pill count and urine drug screen because she was babysitting and had no way to get to the office (Tr. 29, 1289). Plaintiff was told to continue physical therapy (Tr. 29, 1290). She alleged that she had an appointment with Parkview Nutritional Services on June 20, 2018 (Tr. 29, 1290). However, when they were called for an official date, it turns out Plaintiff never actually scheduled with them (Tr. 29, 1290). Objective medical findings indicate that Plaintiff had normal ranges of motion in the lumbar spine, full and pain-free peripheral joint motion, redness and trace edema in the right lower extremity, no atrophy, a normal gait, and an appropriate mood and affect (Tr. 29, 1296).

When assessing Plaintiff's RFC, the ALJ also considered the medical opinion evidence in the record. As the ALJ explained, the State agency medical consultant who reviewed Plaintiff's records at the initial level of administrative review in late-July 2017 opined that Plaintiff was capable of light work, but she could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl (Tr. 31-32, 176-77). The medical consultant further opined that Plaintiff must avoid concentrated exposure to wetness and vibration (Tr. 31-32, 177). At the reconsideration level of review, another medical consultant provided similar opinions, but noted that Plaintiff could only occasionally balance, stoop, kneel,

10

crouch, and crawl, and she could stand/walk for up to four hours per day (Tr. 32, 188-90). The ALJ found these opinions to be of limited persuasiveness (Tr. 32). As the ALJ explained, the record shows that Plaintiff was limited to standing and/or walking only up to two hours in an eight hour work day and for shorter periods at one time (Tr. 32).

The ALJ's decision also shows that he gave due consideration to Plaintiff's obesity (Tr. 18, 23, 26). As the ALJ remarked, Plaintiff's obesity is documented throughout the record (Tr. 26, 877, 881, 884, 887, 890, 894, 1051, 1067, 1076, 1079, 1087, 1090, 1111, 1165, 1169, 1192, 1204-05, 1225, 1246, 1259, 1282, 1319, 1323, 1325, 1331, 1333, 1336, 1338, 1357). But there is no evidence that Plaintiff received any specialized treatment for the condition (Tr. 31). Nor is there medical opinion evidence indicating that Plaintiff had significant limitations in organ function, mobility, strength, gait, and dexterity as a result of obesity that would not be accounted for in the assessed RFC finding (Tr. 26).

Plaintiff relies upon *Adams v. Berryhill*, No. 1:18-CV-291-PPS, 2019 WL 2591016 (N.D. Ind. June 24, 2019), to challenge the ALJ's assessment that she could occasionally crawl, stoop, and crouch. In *Adams*, the claimant was diagnosed with patellofemoral syndrome and prescribed a knee brace, which she was supposed wear every day. *Id*. at *2. She reportedly required a wheelchair or scooter to go to the store. *Id.* A lumbar spine MRI showed disc protrusion and bilateral L5 pars defect without anterolisthesis or retrolisthesis of L5 on S1. *Id*. at *2. The claimant weighed 344 pounds and had a BMI of 57.2, which is considered to be "extreme obesity." *Id.* at *2-3; *see also* SSR 02-1p, 2002 WL 34686281 ("Extreme" obesity includes a BMI greater than or equal to 40). In *Adams*, this Court found that there was no logical bridge between the record and the ALJ's finding that she could do light work with other restrictions. 2019 WL

11

2591016 at *4.

In considering its decision in *Adams*, this Court recently stated that "[i]t goes without saying that every case must be decided on its own facts." *Hasch v. Saul*, No. 1:19-cv-150-PPS, 2020 WL 614644, at *3 (N.D. Ind. Feb. 10, 2020). In *Hasch*, as in *Adams*, the plaintiff argued that the RFC's finding that she could occasionally stoop, kneel, crouch, or crawl "defies logic" (Id. at *2). As the Court noted,

> Unlike Adams, Hasch does not challenge the ALJ's conclusion that she is capable of standing and walking required to perform light work. By contrast, in addition to the challenges presented by extreme obesity, Adams had other severe impairments different from Hasch's, which included Ehlers-Danlos syndrome, degenerative disc disease, postural dizziness, and knee osteoarthritis, all of which could impact the ability to stand and walk. The common element of extreme obesity does not make the two cases parallel. Because she is unable to offer a compelling argument that she is like Adams in all relevant respects, Hasch's reliance on my *Adams* decision does not require remand here.

Id. at *3.

Similarly, the facts of *Adams* are clearly distinguishable from this case. Here, Plaintiff cites to records indicating that her BMI was less than 50. Records show that Plaintiff had a normal gait without an assistive device (Tr. 916, 1111, 1225, 1296). Plaintiff testified that she started using a cane around a month before the hearing, but it was not prescribed by any doctor (Tr. 24, 47). As the ALJ remarked, examinations by Plaintiff's healthcare providers have usually been relatively unremarkable, often noting normal range of motion, normal gait, and normal strength, as well as negative straight leg raise testing (Tr. 26, 885, 1053, 1067, 1081, 1087, 1111, 1165, 1192, 1205, 1225, 1259, 1296, 1322, 1329, 1336, 1357-58). Radiology studies of Plaintiff's lumbar spine have shown degenerative disc disease with some left L5 nerve root impingement, but no significant central canal stenosis (Tr. 26, 1179, 1336, 1360). Lumbar spine surgery has not

been recommended (Tr. 26, 1336-37). X-rays of Plaintiff's left knee have shown only mild degenerative changes (Tr. 26, 1202). X-rays of her bilateral hips showed minimal osteoarthritis (Tr. 26, 1177). Plaintiff reported that her pain medication was effective, with Norco reducing her pain symptoms by 80% (Tr. 31, 66-67, 1289). In contrast to *Adams*, the ALJ here limited Plaintiff to a reduced range of sedentary (not light) work with numerous postural and environmental limitations, as well as the ability to alternate positions while remaining on task (Tr. 23). Plaintiff does not challenge the ALJ's conclusion that she could perform the sitting/standing/walking requirements of sedentary work. As in *Hasch*, the evidence in this case supports the ALJ's RFC finding. Plaintiff fails to show that remand is warranted under *Adams*.

      Although Plaintiff contends that the ALJ's assessed postural limitations are "absurd and illogical," she does not specify what – if any – additional limitations were warranted by the medical evidence. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (finding that a skeletal argument does not preserve a claim). As the ALJ explained, although Plaintiff has some severe symptoms and limitations of function, she failed to establish greater limitations of function through the medical records (Tr. 30). *Hasch*, 2020 WL 614644 at *3 ("Judicial appeal is not an opportunity for a *de novo* determination of disability; it's an opportunity to demonstrate reversible error by the ALJ below. This requires an argument demonstrating what the error was, including why something else should have been done or decided."); *Kinsey v. Berryhill*, No. 2:16-cv-69-PRC, 2017 WL 1101140, at *8 (N.D. Ind. Mar. 24, 2017) ("Plaintiff has not shown what additional functional limitations the impairment… would have necessitated."); *see also Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) ("The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner."); 20 C.F.R. § 416.912 ("In

13

general, you have to prove to us that you are blind or disabled."). The ALJ's RFC finding for a reduced range of sedentary work with numerous postural and exertional limitations, as well as an option to alternate positions, was reasonable and is supported by substantial evidence. Accordingly, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: June 9 , 2020.

                                                  s/ William C.  Lee
                                                  William C. Lee, Judge
                                                  United States District Court